IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHELLE MERILLAT,**                                              07-CV-1062-BR

        Plaintiff,                                         OPINION AND ORDER

v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

        Defendant.


**TIM D. WILBORN**
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

        Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney's Office
**BRITANNIA I. HOBBS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

1   -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-3621

       Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Michelle Merillat seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

     Plaintiff filed applications for DIB and SSI on April 19, 2002, alleging disability since January 1, 1993. Tr. 18, 344-47.[1] The applications were denied. Tr. 349-53. Plaintiff did

---

[1] Citations to the official transcript of record filed by the Commissioner on January 2, 2008, are referred to as "Tr."

2 - OPINION AND ORDER

not appeal the denial.  On January 3, 2003, Plaintiff filed applications for DIB and SSI again alleging a disability onset date of January 1, 1993.  Tr. 66-68, 80.  The applications were denied initially and on reconsideration.  Tr. 34-38, 40-43, 355-59, 361-63.  An Administrative Law Judge (ALJ) held a hearing on April 13, 2005.  Tr. 368-406.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, a lay witness, and a vocational expert (VE) testified.  Tr. 368-406.  The ALJ issued a decision on May 26, 2005, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 18-29.

The Appeals Council denied Plaintiff's request for review.  Tr. 6-9.  On May 26, 2005, therefore, the ALJ's decision became the final decision of the Commissioner.

## BACKGROUND

Plaintiff was born on October 17, 1970, and was 34 years old at the time of the hearing.  Tr. 372.  Plaintiff graduated from high school and took some college courses.  Tr. 372.  Plaintiff worked part-time for a number of years, but she does not have any past relevant work experience.  Tr. 28.

Plaintiff alleges disability due to a combination of bipolar disorder, obsessive compulsive disorder (OCD), and anxiety.  Tr. 70.

The ALJ acknowledged Plaintiff has the severe impairments of

3   -   OPINION AND ORDER

cyclothymic disorder and OCD, but the ALJ denied benefits on the ground that Plaintiff retains the residual functional capacity (RFC) to perform jobs that exist in significant numbers in the national economy such as library clerk, small-products assembler, and laundry folder.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  Plaintiff, however, contends the ALJ erred by improperly rejecting (1) Plaintiff's testimony; (2) lay-witness testimony; and (3) the March 2005 opinion of Jane Starbird, Ph.D., examining physician.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 22-22, 24-26.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841

4   -   OPINION AND ORDER

(9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins*, 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

5   -   OPINION AND ORDER

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must

6   -   OPINION AND ORDER

assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden

shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. 28.

At Step Two, the ALJ found Plaintiff has severe impairments of cyclothymic disorder and OCD.  Tr. 28.

At Step Three, the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  When the ALJ assessed Plaintiff's RFC, he found Plaintiff does not have any exertional limitations.  The ALJ found Plaintiff could understand, remember, and carry out short, simple instructions and could "make judgments on simple work-related decisions."  Tr. 28.  The ALJ further found Plaintiff has slight restrictions in her ability to understand, to remember, and to carry out detailed instructions

8   -   OPINION AND ORDER

and in her ability to interact with the public. The ALJ found Plaintiff has moderate restrictions in her ability to respond appropriately to work pressures "in a usual work setting" and to changes in a routine work setting. Tr. 28. Finally, the ALJ found Plaintiff's "competence and productivity at the work site is variable." Tr. 28.

At Step Four, the ALJ found Plaintiff did not have any past relevant work. Tr. 28.

At Step Five, the ALJ found Plaintiff is capable of working in occupations that exist in significant numbers in the local and national economies. Tr. 29. Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 29.

## DISCUSSION

As noted, Plaintiff contends the ALJ erred by improperly rejecting (1) Plaintiff's testimony; (2) lay-witness testimony; and (3) the March 2005 opinion of Dr. Starbird, examining physician.

**I.   The ALJ did not err when he rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom

9   -   OPINION AND ORDER

testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found although Plaintiff has cyclothymic disorder and OCD, her symptoms are controlled with medication.  The ALJ also found Plaintiff's allegations as to her limitations to be not entirely credible.  The ALJ noted in August 1997 Philip Shapiro, M.D., opined Plaintiff was "essentially clinically stable" when taking her medications.  Tr. 164.  In August 1998, Plaintiff reported to Dr. Shapiro that her OCD symptoms were under control.  Tr. 159.  In September and November 1998,

10  -   OPINION AND ORDER

Plaintiff reported to Dr. Shapiro that her symptoms were either not present or minimal most of the time. Tr. 157-58. Dr. Shapiro opined in February 1999 that Plaintiff's medications were working and that she was "within normal levels." Tr. 156. The ALJ also noted Plaintiff's GAF[2] scores of 70 and 65, which indicate mild symptoms or some impairment of social or occupational functioning. Tr. 156, *DSM-IV* 32. The ALJ further noted Plaintiff's current activities were inconsistent with her alleged limitations. Tr. 24. The ALJ noted Plaintiff works part-time, lives independently with her minor son, and is able to grocery shop and to use the telephone. Tr. 24. The ALJ noted Plaintiff had at least two boyfriends in recent years and "one solid relationship" as of the hearing date. Tr. 24. Finally, the ALJ noted Plaintiff's counselors suggested in their reports that Plaintiff has a secondary-gain motive. For example, the ALJ noted on December 6, 2002, Plaintiff reported to Laura Martin, M.S.W., that receiving disability benefits would "solve all of [her] problems." Tr. 138. In December 2003, Martin also noted Plaintiff's noncompliance in taking her medication and avoidance of previously successful group therapy. Tr. 308, 322. The ALJ also noted Martin's opinion in May 2004 that Plaintiff was

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994)(*DSM-IV*) at 30-32.

11  -   OPINION AND ORDER

avoiding group therapy because it might be a "stepping stone toward work." Martin concluded Plaintiff's "primary goal at this point would be to obtain social security disability, and it may be that improved functioning would not be seen as making progress toward that." Tr. 310.

On this record, the Court concludes the ALJ did not err when he rejected Plaintiff's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when he rejected the testimony of lay witnesses.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Although lay testimony is not medical testimony, it is still competent evidence that the ALJ must take into account. *Lewis*, 236 F.3d at 511.

### A. Statements of April Denkers and Sharon Shiel

Before the hearing, lay witnesses April Denkers and Sharon Shiel submitted written statements regarding Plaintiff's functional capacity. Both witnesses indicated Plaintiff suffered from severe anxiety and had difficulty working with others. Tr. 109, 125-28. The ALJ found this testimony to be "of limited

12 - OPINION AND ORDER

use."  Tr. 26.  The ALJ noted although the witnesses testified that Plaintiff was not able to work due to excessive worrying and OCD behaviors, they also described her activities of daily living as "full-ranged" and independent.  The ALJ found the statements of these witnesses regarding Plaintiff's inability to work were contradicted by Plaintiff's actual activities of daily living and by the medical findings of her examining and treating physicians.

Based on this record, the Court finds the ALJ gave "reasons germane to each witness" for finding their statements to be of limited use.  Accordingly, the Court concludes the ALJ did not err when he gave little weight to these lay-witness statements.

B.   Patricia K. Thompson, L.P.C.

On July 29, 2002, Counselor Supervisor Patricia K. Thompson noted Plaintiff met with Certified Counselor Carolyn Patrick on April 16, 2002, and Plaintiff requested an evaluation at that time to assist her "in making a decision with regard to her employment situation."  Tr. 236.  Thompson noted Plaintiff reported to Patrick that she was concerned her anxiety and depression had become so severe that she would be unable to continue her part-time employment.  Tr. 236.  Thompson further noted, however, Plaintiff met one more time with Patrick, but Plaintiff did not return for further therapy.  Thompson opined

> [Plaintiff] exhibits symptoms of debilitating
> anxiety in the presence of people and chronic

13  -   OPINION AND ORDER

>> depression in response to the limitations imposed by her dysfunction.  In my opinion, [Plaintiff] . . . would benefit greatly from the financial intervention that disability benefits provide.  I believe that disability assistance would enhance [Plaintiff's] opportunity to engage in therapy for treatment of her anxiety and depression.

Tr. 236.

The ALJ rejected Thompson's opinion on the ground that Plaintiff only met twice with a counselor.  In addition, Thompson did not meet with Plaintiff and based her opinion primarily on Plaintiff's self-report of symptoms as reported by Patrick, which the ALJ found to be less than credible.

Based on this record, the Court finds the ALJ gave "reasons germane to" Thompson to reject her opinion.

Accordingly, the Court concludes the ALJ did not err when he rejected Thompson's opinion.

### III. The ALJ properly rejected the March 2005 opinion of Dr. Starbird.

Plaintiff asserts the ALJ erred when he rejected the March 2005 opinion of Dr. Starbird.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

On January 27, 2005, Dr. Starbird conducted a psychodiagnostic examination of Plaintiff and concluded Plaintiff's

> presentation in the interview suggested a person who is functioning more competently in day-to-day life than the symptoms described . . . would suggest. . . .  It is the opinion of this examiner that [Plaintiff's] cyclothymia is well managed . . . .  It is the opinion of this examiner that the limitations caused by her mood problems are not significant at this time.  However, it is also believable that, with an increase in stressors, these problems with mood would resurface.

15  -  OPINION AND ORDER

> \* \* \*
>
>> [Plaintiff] also describes many types of symptoms related to anxiety. . . . Although her report is deemed credible, it is also the opinion of this examiner that she manages well with the signs and symptoms and is not severely limited by them . . . . She is assigned the diagnosis of obsessive-compulsive disorder. The symptoms of . . . social phobia are not considered severe enough to warrant a separate diagnosis at this time.

Tr. 263. Dr. Starbird opined Plaintiff has slight limitations in her ability to understand and to remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the public. Tr. 265-66. Dr. Starbird opined Plaintiff has moderate limitations in her ability to respond appropriately to work pressures in a usual work setting and to respond appropriately in a routine work setting. Tr. 266.

On March 20, 2005, Dr. Starbird filled out a Medical Source Assessment provided by Plaintiff's counsel and opined Plaintiff would have noticeable difficulty "no more than 10% of the workday or workweek" understanding and remembering detailed instructions; carrying out detailed instructions; "perform[ing] activities within a schedule, maintain[ing] regular attendance, and/or be[ing] punctual within customary tolerances"; sustaining an ordinary routine without special supervision; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and responding to changes in the work setting. Tr. 341-42.

16  -   OPINION AND ORDER

Dr. Starbird opined Plaintiff would have noticeable difficulty "from 11-20% of the workday or workweek" maintaining attention and concentration for extended periods of time, completing a normal work day and workweek without interruption from psychologically based symptoms, interacting appropriately with the general public, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, traveling in unfamiliar places, or using public transportation.  Tr. 341-42.

   The ALJ did not give significant weight to Dr. Starbird's March 2005 opinion because it was contradicted by Dr. Starbird's January 2005 findings and opinion that were written concurrently with her examination of Plaintiff.  The ALJ also noted Dr. Starbird's March 2005 opinion was contradicted by other evidence in the record such as the opinion of Kate Morris, Ph.D., examining physician, who opined Plaintiff was capable of sustaining employment despite her social phobia and that Plaintiff's symptoms could further improve with structured therapy.  Tr. 274.

   Based on this record, the Court concludes the ALJ did not err when he rejected Dr. Starbird's March 2005 opinion because he provided legally sufficient reasons based on substantial evidence in the record for doing so.

   Accordingly, the Court concludes the ALJ did not err when he rejected the March 2005 opinion of Dr. Starbird.

17 -   OPINION AND ORDER

**CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 20th day of August, 2008.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER